UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5: 23-072-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| AKILI ONEAL SIMPSON, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

A federal grand jury indicted Defendant Akili Simpson on July 6, 2023, on four counts of distributing a mixture or substance containing fentanyl in violation of 21 U.S.C. § 841(a)(1), and on one count of distributing a mixture or substance containing fentanyl which resulted in the overdose death of a person identified as "E.J." in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). [Record No. 1] Thereafter, Simpson has filed motions to suppress: (i) evidence found during a search of electronic devices seized by officers on May 28, 2023; (ii) evidence obtained during a search of a residence on Fox Harbor Drive; and (iii) statements Simpson subsequently made to officers during a custodial interrogation. [Record Nos. 30, 31, 33]

The motions were referred to United States Magistrate Judge Edwin B. Atkins, who held an evidentiary hearing on October 19, 2023, before issuing a Recommended Disposition. Through the Recommended Disposition issued on November 20, 2023, Magistrate Judge Atkins recommends that the undersigned deny Simpson's motions to suppress evidence obtained during the search of electronic devices and at the residence at Fox Harbor Drive but

-1-

grant the motion to suppress statements made by Simpson during his custodial interrogation. [Record No. 61] Both parties objected to parts of the Recommended Disposition.

As explained below, the Court will adopt Magistrate Judge Atkins' recommendations, in part. More specifically, and after conducting a *de novo* review, the undersigned will deny the defendant's motions relating to evidence obtained on electronic devices and at the residence but also deny the defendant's motion to exclude statements made to officers while in custody.

## I.    Searches Implicating the Fourth Amendment

On May 28, 2023, a caller informed police that her daughter was traveling to the area of a Walmart store in Danville, Kentucky, to purchase fentanyl in a drug transaction. [Record No. 33-2] Officers traveled to the location where they observed a passenger of a black Dodge Charger approach the driver's door of a silver Honda Odyssey and "appear to exchange something." [*Id*.] Following the interaction, the officers conducted traffic stops of both vehicles. [*Id*.] Hannah Owens, the driver of the Odyssey, told officers that she had "just bought pills from the black Charger." During a search of the Odyssey, officers found "numerous round blue pills suspected to be Percocets or fentanyl pills pressed to look like Percocets." [*Id*.] Owens told officers that she "paid $400 for 55 pills." [*Id*.] During the accompanying traffic stop of the Charger, officers identified Akili Simpson as the owner and operator of the vehicle, and Jaylon Brashear and Trekale Simpson as passengers. [*Id*.]

Braschear was identified as the individual who appeared to exchange an item with the driver of the Odyssey. As a result, Braschear was arrested him for trafficking in controlled substances. [*Id*.] This led to additional searches of the individuals in the vehicle and ultimately the vehicle itself. Officers discovered more than $1,000 and an Apple iPhone 13 Pro Max on

Simpson's person.  [*Id.*]  Additionally, the officers located over $7,000 in loose cash within the Dodge Charger, a red Apple iPhone 13 located in the driver-side door, and a Samsung Galaxy phone in the center console. [*Id.*]

Days later (on May 30, 2023), officers obtained a search warrant for the three phones found in the Charger, stating that it was "probable that one of the phones located in the vehicle would have evidence pertaining to the arranging of the witnessed drug transaction."[1] [*Id.*]  The cell phones were searched on June 5, 2023, pursuant to this warrant.[2]  The government seeks to use evidence found on the red Apple iPhone 13 and the Samsung Galaxy in the instant case against Simpson.[3]   [Record No. 46]  However, Simpson seeks to suppress the evidence extracted from the cell phones found in his vehicle.  He argues that the affidavits submitted in support of the search warrants failed to establish probable cause. [Record No. 33]  He further contends that the *Leon* good faith exception is inapplicable because the affiant only speculated that one of the three phones probably contained evidence of the crime. [Record No. 52]

Two weeks after the alleged drug transaction summarized above, officers again stopped Simpson while he was driving a Black Nissan Altima near Fox Harbor Drive, in Danville, Kentucky. [Record No. 31]  The officers served Simpson with the federal indictment issued in

---

[1]    Danville Police Department Detective Paul Megilligan is identified as the affiant who provided information contained in the affidavits submitted to procure the search warrants.

[2]    The United States was directed to provide supplemental briefing regarding the dates on which the searches occurred. [Record No. 65] As Simpson correctly emphasized, officers who perform searches after receive notice of a warrant's deficiency cannot rely upon the good faith exception.  *See United States v. Leake*, 998 F. 2d 1359, 1367 (6th Cir. 1993).

[3]    The government states that the Apple iPhone 13 Pro Max found on the defendant's person "could not be unlocked for examination.  There was no forensic examination of this phone and thus no evidence was obtained from this cell phone." [Record No. 46] Therefore, the Court's analysis focuses on the two cell phones actually searched.

this case before placing him into custody.  During the arrest, officers found "a large amount of cash in [Simpson's] pocket," marijuana in the vehicle, and "smelled a strong odor of marijuana" near the vehicle. [Record No. 31-1]

At some point during the search of the Nissan, Haley Derringer approached officers claiming that she and Simpson recently moved in together at 135 Fox Harbor Drive. [*Id.*] Derringer also stated that the vehicle Simpson had been driving belonged to her and that they possessed "marijuana in the residence." [*Id.*]   Officers obtained a search warrant for the residence based on this information. [*Id.*]  The affidavit attached to the warrant cited the above circumstances, as well as "various assertions about the common activities of drug traffickers, drug manufacturers, and money launderers." [Record No. 61]

## Standard of Review

The Fourth Amendment's guarantee against unreasonable searches and seizures requires that warrants based upon probable cause describe with particularity the place to be searched and the persons and things to be seized. *Illinois v. Gates*, 462 U.S. 213 (1983); *United States v. Archibald*, 589 F.3d 289, 301 (6th Cir. 2009).  When a defendant moves to suppress evidence obtained against him, courts examine "whether the [issuing] magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited."  *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991) (citation omitted).  In other words, law enforcement "must submit an affidavit that indicates a fair probability that evidence of a crime will be located on the premises of the proposed search" demonstrating probable cause to support the warrant. *United States v. Hines*, 885 F.3d 919, 923 (6th Cir. 2018) (quoting *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005); *see also United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001)  ("[P]robable

-4-

cause exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place.")

An affidavit submitted in support of a search warrant also must establish a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (*en banc*) (citing *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)). Review of the sufficiency of evidence supporting the probable cause necessary to issue a warrant must be limited to information presented within the four corners of the affidavit. *United States v. Berry*, 565 F.3d 322, 338 (6th Cir. 2001). And at least one district court in this circuit has found that, for searches related to suspected drug offenses, "[p]ossessing a cell phone during one's arrest for a drug-related conspiracy is insufficient by itself to establish a nexus between the cell phone and any alleged drug activity." *United States v. Ramirez*, 180 F. Supp. 3d 491, 494 (W. D. Ky. 2016).

Safeguards exist to prevent unlawfully obtained evidence from being admitted against a criminal defendant under the exclusionary rule. *Mapp v. Ohio*, 367 U.S. 643 (1961). Specifically, the exclusionary rule applies to evidence gained from an unreasonable search or seizure that runs afoul of the Fourth Amendment. [*Id.*] Yet, under the "good faith" exception, the exclusionary rule will not bar the government's introduction of evidence obtained by officers acting in objectively reasonable reliance on a search warrant that is subsequently determined as deficient of probable cause. *United States v. Leon*, 468 U.S. 897, 918-921 (1984). The exception applies "unless the evidence is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Watkins*, 179 F.3d 489, 494 (6th Cir. 1999); *see United States v. Silvey*, 393 F. App'x. 301, 305 (6th Cir.

2010) (courts should deny the good faith exception when "affidavit [is] so barren of detail that a reasonable officer would have known that [it] did not meet constitutional standards").

Finally, the Court notes that a criminal defendant has standing to challenge the admission of evidence obtained by a search or seizure only if the defendant's own constitutional rights have been violated. *See United States v. Davis*, 430 F.3d 345, 359-60 (6th Cir. 2005); *see also United States v. Evers*, 669 F.3d 645, 651 (6th Cir. 2012) ("[t]he proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure," citing *Rakas v. Illinois*, 439 U.S. 128 (1978)).

## Analysis

### A. Motion to Suppress Evidence on Cellphones

A cell phone cannot be searched simply because it is seized incident to an arrest. *Riley v. California*, 573 U.S. 373, 386 (2014). Therefore, unless an exception applies, officers must have probable cause to obtain a warrant. [*Id.*] In seeking to establish probable cause that cell phones contain evidence of drug crime, an affidavit supporting a search warrant must have established a nexus between the place to be searched and the things to be seized. *Carpenter*, 360 F.3d 594. Here, the warrant authorized to search the cell phones days after law enforcement stopped Simpson contained facts in an attempt to connect them with the drug transaction that officers witnessed, including: (1) the statement from the mother of Hannah Owens claiming that her daughter planned to be at a Walmart location in Danville, Kentucky, to obtain controlled substances; (2) a subsequent statement from Owens acknowledging that she arranged the meeting "via a social media app"; (3) vehicle passenger Brashear's admission to officers that he had sold a controlled substance to the female in the Honda Odyssey later

identified as Owens; (4) discovery of a significant amount of loose currency in Simpson's Dodge Charger; (5) the determination that the Charger's passengers had no more than a combined total of $3.00 on their persons at the time of the traffic stop; (6) the inference that the cash Owens used to purchase the drugs would likely be located on Simpson's person or otherwise in Simpson's vehicle because no passenger possessed it; and (7) the affiant's belief that "one of the phones located in the vehicle would have evidence pertaining to the arranging of the witnessed drug transactions." [Record 33-2]

As a general proposition, an affidavit does not establish probable cause for the search of a cell phone when it relies solely on the fact that a defendant had possession of the phone during his arrest for a drug-related conspiracy and an assertion by an affiant that his or her training and experience suggest such conspiracies are often facilitated by cell phones. *See United States v. Merriweather*, 728 F. App'x 498, 506 (6th Cir. 2018) (discussing *United States v. Ramirez*, 180 F. Supp. 3d 491 (W.D. Ky. 2016).  However, the Sixth Circuit has also concluded that, when the affidavit contains more (such as a factual basis to support a conspiracy or coordinated activity), a search of an alleged member's cell phone is not unreasonable.  For example, in *Merriweather*, the Court explained that "the *Ramirez* affidavit did not. . . allege that cell phones were used to facilitate two drugs buys from [the defendant] or that the particular cell phone at issue was found in a vehicle containing apparent oxymorphone, the very drugs involved in the conspiracy." *Id*.  Similarly, in *United States v. Bass*, 785 F.3d 1043 (6th Cir. 2015), the court held that an affidavit supporting a search of a defendant's cell phone established a nexus with the charged fraud conspiracy because the affidavit "stated that [the defendant] and his co-conspirators frequently used cell phones to

communicate" and it "further noted that [the defendant] was using this particular . . .cell phone when officers seized it incident to his arrest." *Id*. at 1049.

This case falls somewhere in between.  As the Magistrate Judge correctly concluded, the affidavit did not establish the requisite nexus between the cell phone to be searched and evidence of illegal activity.  And as Simpson emphasized, the affidavit lacked specificity regarding who Hannah Owens communicated with *via* a social media app and on what device that communication allegedly occurred. [*Id*.]  Further, the affiant contains no claim that any particular individual within the vehicle used one of the seized cellphones to communicate with Owens and none of the individuals were using the phones at the time of the stop. [Record No. 33]  Therefore, the Court turns to whether good faith exists for the officer's actions.

When officers act on objectively reasonable reliance of a search warrant subsequently determined to be deficient, the good faith exception can preserve the viability of evidence discovered by law enforcement.  *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citing *Leon*, 468 U.S. at 918-921).  However, the good faith exception does not apply in certain cases, including those "where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient." [*Id*. at 484] (citing *Leon*, 468 U.S. at 923).

Relying on *Laughton's* holding, Simpson argues that the search warrant affidavit in this case failed to connect the two cell phones in question with the observed drug transaction because it lacked specificity regarding which particular device contained evidence of a crime. [Record No. 64]  In his words, "[a] reasonably well-trained officer would not have proceeded with an exploratory search." [*Id*.]  Simpson claims his case is more like *Ramirez*, where the good-faith exception did not apply despite an affiant declaring that individuals may preserve

text messages in cellphones that related them to the crime based on the affiant's experience, as well as the phone's description and the specific allegation that the defendant participated in a drug conspiracy.  [*Id*.]

But reading the statements in the affidavit together, through a "totality of the circumstances determination, rather than a line-by-line scrutiny," *Greene*, 250 F.3d at 479, an officer could reasonably conclude that it provided probable cause to believe at least one of the cell phones seized during the stop contained incriminating evidence of a drug crime.  Although the warrant here likely should not have been issued, the affidavit provided by Danville Police Department Detective Paul Megilligan is "not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *Watkins*, 179 F.3d at 494.  It referenced a credible tip that a drug transaction would take place involving a specified party at a particular location, a declaration by the drug purchaser that she used an electronic device to arrange the buy, an admission that a drug transaction had just taken place by one of the vehicle's passengers, and a large amount of cash found on Simpson's person and in the vehicle. As in *Merriweather*, the officers could have reasonably believed that the cell phones were used to facilitate the drug transaction that they observed based on good faith reliance of the warrant. 728 F. App'x 498, 506 (noting that while arranging a meet to purchase drugs does not "directly implicate a [defendant's] cell phone, an officer could reasonably infer that (the other person) then arranged with the defendant via cell phone [about] where to meet.")

Consider, for example, the warrant application in *Nathanson v. United* States, 290 U.S. 41, 44 (1933), in which an officer swore that "he has cause to suspect and does believe" that illegal liquor would be found in Nathanson's home.  Or consider the affiants' claim in A*guilar v. State of Tex.*, 378 U.S. 108, 109 (1964), that they had "received reliable information from a

credible person" that drugs could be found at Aguilar's home.  Both cases present archetypal examples of bare-bones affidavits where the law enforcement officer "ask[ed] the magistrate to simply take his word for it."  *United States v. White*, 874 F.3d 490, 500 (6th Cir. 2017).  But that is not the case here.  Instead, the affidavit offered "factual allegations that, even if insufficient in isolation and circumstantial in nature, render the officer's reliance on the warrant objectively reasonable." *Merriweather*, 728 F. App'x at 506.  As such, the good-faith exception articulated in *Leon* applies to the search of the red iPhone discovered in the Dodge Charger's driver door, rendering evidence obtained from it admissible.

Next, the undersigned concludes that Simpson lacks standing to challenge admission of any evidence obtained from a search of the Samsung Galaxy seized from the console of the vehicle.  The Magistrate Judge determined that this phone appears to belong to unindicted coconspirator Brashear.  [Record No. 61] Simpson offered no argument discussing how the search and seizure of another individual's cell phone violated his constitutional rights.  *Davis*, 430 F.3d, 359-60; *see also United States v. Molina¸*569 F. Supp. 596, 621 (6th Cir. 2021) (finding that only those whose constitutional rights are violated may seek suppression, not those merely aggrieved by the introduction of damaging evidence).  Therefore, Simpson's attempt to exclude evidence obtained from the Samsung Galaxy fails.

### B.  Motion to Suppress Evidence Obtained at Residence

Next, Simpson seeks to suppress the evidence found at 135 Fox Harbor Drive, claiming that the affidavit in support of the search warrant did not establish probable cause. [Record No. 31] As stated above, an affidavit supporting a search warrant must establish a nexus between the place to be searched and probable evidence of illegal activity.  Here, evidence connecting Simpson to potential illegal activity at the Fox Harbor residence includes Derringer's

-10-

statements that she lived at the residence with Simpson and that there was marijuana at the residence, the officers' observance of Simpson at that residence, and the fact that Simpson entered the Nissan Altima at that residence smelling strongly of marijuana, an odor police detected after stopping him. Therefore, the affidavit contained sufficient probable cause to obtain a search warrant for the residence.

The Court must look to the totality of the circumstances to determine whether the warrant was supported by probable cause, including information about the veracity, reliability, and basis of knowledge of the informant. *Illinois v. Gates*, 462 U.S. 213, 230 (1983). "The court must ensure that the magistrate was informed of some of the underlying circumstances from which the informant concluded evidence of a crime is where he claimed it would be found, and some underlying circumstances from which the officer concluded that the informant [] was reliable." *United States v. Smith*, 182 F.3d 473 (6th Cir. 1999). Statements by an informant who would be subject to prosecution for making a false report because their identity is known to police are entitled to greater weight than those of an anonymous source, even though these statements alone cannot establish probable cause. *United States v. Dyer*, 580 F.3d 386, 391; *United States v. Higgins*, 557 F.3d 381, 390.[4]

Informant reliability is the focus of Simpson's objection. He cites the fact that the affiant offered no commentary on Derringer's trustworthiness and made no effort to corroborate her statement that the residence contained marijuana at the time of the subject arrest. [Record No. 64] Simpson also notes that the affidavit mentioned no observance of

---

[4]     Statements by informants that help establish sufficient probable cause for a search warrant often "contain[] the informant's name plus other indicia of reliability." *United States v. Howard*, 632 F. App'x 795, 800 (6th Cir. 2015).

Derringer at the residence nor with the defendant.  [*Id.*] He concedes the olfactory detection of marijuana near the Nissan Altima and the discovery of marijuana inside the vehicle connecting the defendant to drugs likely provided probable cause for officers to search the vehicle but not the residence.  [*Id.*]  In his view, Derringer's statements about the existence of marijuana at the residence failed to connect Simpson with possibly incriminating evidence at that location, even when considered alongside other facts.  *See Dyer*, 580 F.3d at 396 (noting that an affidavit should "indicate a fair probability that evidence of a crime will be located on premises of the proposed search.")

Yet, in *United States v. Stokes*, the Sixth Circuit held that the affidavit supporting a search warrant was sufficient to establish probable cause where the informant: (1) had his name listed in the affidavit; (2) subjected himself to criminal liability with his tip; (3) had proven reliable before; and (4) witnessed drugs and money in the defendant's possession.  742 F. App'x 947 (6th Cir. 2018).  Substantial police corroboration was not necessary because other "hallmarks of reliability" existed to a sufficient degree. [*Id.* at 951]  Likewise, in this case, "the informant's identity was known to officers and the issuing judge, her comments subjected her to potential prosecution for not only making a false claim to police but also marijuana possession, and she stated that she lived in the home."  [Record No. 61]  As the Magistrate Judge correctly concluded, these factors weigh in favor of Derringer's reliability.  [*Id.*]

Although Simpson points to *United States v. Smith* to undermine Derringer's basis of knowledge for the information she provided law enforcement, the case has the opposite effect. 182 F.3d 437, 480 (6th Cir. 1999).  Despite Simpson's arguments to the contrary, there is no need for an informant to have provided credible information to police on multiple prior occasions for a court to recognize his or her reliability or credit his or her basis of knowledge.

Here, "the informant's basis of knowledge was firsthand," and as a result an "explicit and detailed description of alleged wrongdoing was not necessary because an unusually reliable informant observed illegal activity on the premises" with her own eyes. [*Id.*] (citing *Spinelli v. United States*, 393 U.S. 410, 417 (417)).   Even in the absence of extensively detailed allegations of criminal activity, credit is owed to an informant known by police who has first-hand knowledge regarding the existence and location of drugs in the defendant's possession.

Ultimately, the affidavit in this case satisfied the dictates of *Illinois v. Gates*. Derringer's veracity, reliability, and basis of knowledge provided law enforcement with probable cause to search the residence given the totality of the circumstances.   Notwithstanding this determination, the Magistrate Judge also concluded, and the undersigned agrees, that the good faith exception likewise applies to this search.   As referenced earlier, the exclusionary rule will not bar the government's introduction of evidence obtained by officers acting in objectively reasonable reliance on a search warrant that is subsequently invalidated. *Leon*, 468 U.S. at 918-921.   An officer's reliance on a subsequently invalidated warrant is not objectively reasonable when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable.   *Leon*, 486 U.S. at 914-923.   Affidavits that are "so lacking in indicia of probable cause" have come to be known as "bare bones" affidavits. *United States v. Laughton*, 409 F.3d 744, 748.   A barebones affidavit is one which "states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. Christian*, 925 F.3d 305, 312 (6th Cir. 2019) (quoting *United States v. Washington*, 380 F.3d 236, 241 n.4 (6th Cir. 2004)).   However, an affidavit is not bare bones if it contains a minimally sufficient nexus

between the illegal activity and the place to be searched. *White*, 874 F.3d at 497 (citing *Carpenter*, 360 F.3d at 596).

Two cases are instructive for assessing whether law enforcement's search at Simpson's residence constituted a "bare bones" affidavit and thereby could not fall within the good-faith exception. In *United States v. Lewis*, 81 F.4th 640, 646 (6th Cir. 2023), the court drew a line of inapplicability where an affidavit stated only "the affiant's conclusory belief that a suspect committed a crime" and identified the defendant as a person of interest. In essence, the court noted that it could draw inferences from the information presented in the search warrant affidavit but could not "infer facts that are entirely missing" from it. Then, in *United States v. Laughton*, 409 F.3d 744, 749, 751 (6th Cir. 2005), the subject affidavit failed to show a sufficient connection between the defendant and potential criminal activity at the searched residence where it failed to indicate the location that the informant had purchased the drugs, the location of the residence, or detail when observations connecting the defendant to potential criminal activity were made.

With these precedents as a backdrop, the Magistrate Judge correctly concluded that the affidavit in this case contained evidence connecting Simpson to the searched residence and to the marijuana allegedly located inside. To reiterate, officers found marijuana in the vehicle that Simpson operated before Derringer told officers both that Simpson lived in the nearby residence and that the residence contained marijuana. Even if the Court determined that the search warrant fell short of establishing probable cause, the evidence connecting Simpson to Derringer and to the Fox Harbor residence is sufficient for a reasonable officer to conclude that marijuana would be found in the home pursuant to the good faith exception. Ultimately, Simpson has failed to carry his burden of showing that officers violated his Fourth Amendment

rights in this challenged search, thereby rendering unwarranted the need to suppress evidence obtained at the residence.

## II.    Fifth Amendment Invocation of the Right to Counsel

Immediately following his July 7, 2023, arrest, Officers transported Simpson to the Danville Police Department for questioning. [Record No. 30] During questioning, Simpson sat between a Task Force Office ("TFO") and a detective in the Danville Police Department interview room. [Record No. 38] The TFO began by reciting to Simpson his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and concluded the reading of those rights by saying, "you may have your attorney with you during the questioning if you can't afford an attorney and desire one the court will appoint one for you." [Record No. 38] Simpson responded by stating to the TFO "I got one, that's what I was about to say – is there a way that I can make a–?" [*Id.*; Record No. 30]  In essence, Simpson interjected that he had an attorney and later claimed that he "that he was about to ask about making a call." [Record No. 36] The portion of the interview at issue here can be heard in the video recording of the interrogation as follows:

> TFO: "You may have your attorney with you during the questioning, if you can't afford an attorney and desire one, the Court will appoint one for you."
>
> Simpson: "I got one, that's what I was about to say – is there a way that I can make a –?"
>
> TFO: "Yeah, hang on one second. Uh, where was I going? So, uh, you already have an attorney?
>
> Simpson: "Yeah."
>
> TFO: "Okay that's fine and then uh, but do you understand your rights? So, you know you don't have to speak to us, you can say you don't want to speak–"
>
> Detective: "You can stop the questioning at any time by refusing to answer, consult with your attorney

Simpson: "I ain't … Yeah, if I do that then I don't know what the f– is going on."

TFO: "Right, exactly. So as long as you understand that, you are under arrest right now. This is a warrant for your arrest, so that's why I want you to be fully aware before we go any further. I don't want there to be any confusion about that, okay?"

Simpson: "Can you tell me what my charges are?"

TFO: "Yeah I'm going to go over all of this, that's why I'm here."[5]

[Record Nos. 38, 30, 63] The detective and Task Force Officer proceeded to interview Simpson for about two hours. [*Id.*]

During this interview, Simpson made multiple incriminating statements, which the government seeks to use in the instant case against him. [*Id.*] The defendant neither signed a waiver of his rights, nor consulted with an attorney at any point during the custodial interrogation. Simpson seeks to suppress the statements he made to police during this interrogation on the basis that the officers continued questioning him after he invoked his Fifth Amendment right to counsel by requesting to contact his attorney. [Record No. 30]

The United States argues that Simpson's statement informing officers that he had an attorney and the incomplete request to call that attorney did not clearly and unequivocally constitute an invocation of the right to counsel. [Record No. 36] It emphasizes that Simpson neither "specifically requested to make a phone call to an attorney," nor uttered the word "call"

---

[5]     In its brief objecting to the Magistrate Judge's Recommended Disposition, the United States emphasized that the transcript of the interview between Defendant Simpson and the officers "omits a few relevant statements and words." [Record No. 63] To avoid any appearance of impropriety, it filed a disc containing audio of the relevant portion of the interview. Notably, some of the omitted words were not considered in the Recommended Disposition, but they materially impact the Court's analysis of whether Simpson properly invoked his Fifth Amendment right to counsel.

at any point during the interrogation. [Record No. 63] By continuing to speak freely and voluntarily with the officers, the United States contends that Simpson waived his rights. [*Id.*]

During a custodial interrogation, a suspect is entitled to the assistance of counsel. *Miranda v. Arizona*, 384 U.S. 436 (1966). To invoke the right to counsel during custodial interrogation, the suspect must make a "statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *Davis v. United States*, 512 U.S. 452, 459 (1994) (holding that whether a suspect has properly invoked the right is an objective inquiry). However, "not just any reference to an attorney suffices." *Williams v. Houk*, 676 F. App'x 524, 527 (6th Cir. 2017) (suggesting a clear and unequivocal statement  If the suspect properly invokes the right to counsel, interrogation must cease until an attorney is present. *Miranda*, at 474.  But if the suspect's request is ambiguous or equivocal, an officer is not required to stop questioning.  *Davis*, 512 U.S. at 462.  Further, if a suspect has invoked his right to counsel, courts may admit responses to further questioning only by finding that the suspect (1) initiated further discussions with police and (2) knowingly and intelligently waived the right he had invoked. *Smith v. Illinois*, 469 U.S. 91, 94-95 (1984).

The Magistrate Judge placed great weight on Simpson's comment of "I got one" when asked if he needed a court-appointed lawyer.  However, Simpson's vague declaration alone about having an attorney cannot constitute invocation of the right to counsel.  As the government notes, the Sixth Circuit's decision in *United States v. Suarez*, 263 F. 3d 468 (6th Cir. 2001), held that the right is not properly invoked when defendants fail to articulate that they only want to communicate with law enforcement officers through their legal representation. *See Edwards v. Arizona*, 451 U.S. 477, 484 (1981) (holding that police must end a custodial interrogation once a defendant invokes the right to counsel).  There, even after

Suarez learned that an attorney would meet him at Federal Bureau of Investigation outpost in Detroit, Michigan, he told investigators once in route within the police cruiser that he wanted to "clear this up." [*Id*. at 475]   As the tale often goes, Suarez made self-incriminating statements and later sought to suppress them.   But relying on *Edwards*, the Sixth Circuit held that "[t]he mere fact that the government is aware that a suspect has an attorney, or is soon to have one, does not unambiguously assert the suspect's right to deal exclusively with the police through counsel during custodial interrogation." *Suarez* at 483.   Relying on an objective test, the Court determined that "a reasonable police officer could have interpreted the events to mean that Suarez had not yet made a choice as to whether to deal with police exclusively through counsel." *Id*. at 483-84.

Simpson argued at his suppression hearing that the interrogating officers interrupted him before he could complete his request regarding contacting his attorney.   But as the government correctly notes, "nothing prevented Simpson from revisiting his question once police finished *Mirandizing* him." [Record No. 63]   At no point did Simpson affirmatively indicate that he only wished to speak with the officers with the assistance of counsel.   His mere mention of an attorney falls short in comparison to other defendants who invoked their right by signaling that they would only communicate with law enforcement through representation. *See e.g., Abela v. Martin*, 380 F. 3d 915, 926 (6th Cir. 2004) (acknowledging that the suspect named a specific attorney and provided counsel's business card to the interrogating detective); *Tolliver v. Sheets*, 594 F. 3d 900, 923 (6th Cir. 2010) (emphasizing that the defendant stated that he wished to be alone until he consulted his attorney); *Moore v. Berghuis*, 700 F. 3d 882, 887 (6th Cir. 2012) (noting that the defendant directed the police to "call his attorney's phone number.").

Vague references to an attorney do not properly invoke the right to counsel any more than unfinished requests or incomplete statements. Although interrogating officers generally should not interrupt the suspect being questioned—especially during the administration of *Miranda* rights or otherwise probing whether the defendant seeks to invoke some constitutional protection—a defendant must make a clear and unequivocal request to consult with counsel before the right is activated. *See Davis*, 512 U.S. 452. Simpson's incomplete request, which he argues implied that he "was about to say" something, and his incomplete question of "is there a way I can make a. . . ", both lack any activating legal force of the right in question. Once again, nothing prevented Simpson from finishing his sentence or asking his question in the moments that followed this exchange.

Incomplete requests fail to properly invoke the right to counsel as do words left entirely unsaid by extension. The Sixth Circuit recently decided a case with applicability here in *United States v. Zakhari*, 85 F.4th 367 (6th Cir. 2023). In *Zakhari*, the defendant told officers during his interrogation that his sister was an attorney. The defendant separately requested to call his father, to which the detective responded, "[y]eah, well, is your dad an attorney?" [*Id*. at 9] In response, Zakhari reiterated by stating "[m]y sister's an attorney," and when officers asked if he wished to call her, he responded "[y]eah, I mean sh–," before being interrupted by the interrogating officers. *Id*. The Sixth Circuit stated that the facts show Zakhari "had lawyerly assistance in mind" and adequately invoked his Fifth Amendment right to counsel because, although ineloquent, his response to officers' question about calling his sister was affirmative. "If we required more in this situation, we would essentially invite officers to ask, "but are you really sure" before the right to counsel is invoked, and such a standard would drain *Miranda* of meaning. [*Id*. at 11] Ultimately, the Court held that Zakhari had invoked

his Fifth Amendment right to counsel by responding in the affirmative when asked if he wished to speak with his sister because the statement could be reasonably construed as a request for the assistance of counsel. [*Id*. at 9-10]

Not so in Simpson's case. Unlike the defendant in *Zakhari*, Simpson did not inquire about ceasing the interview after the officers expressly told him he could refuse to answer their questions. In fact, Simpson "never once said that he wanted to stop." *See United States v. Potter*, 927 F.3d 446, 451 (6th Cir. 2019). When the Detective promised that Simpson could end the interview and "consult with [his] attorney" if he so desired, Simpson responding with "yeah, if I do that, I won't know what the f– is going on." [*Id*.] The Magistrate Judge found that Simpson had issued a clearer statement than Zakhari by acknowledging that he already had a lawyer. But as discussed earlier, mere acknowledgment of that fact is insufficient to activate the constitutional protection. By responding with "yeah" when admonished of his right to counsel, the Magistrate Judge found that, "[a]lthough not eloquent, Simpson's statements illustrate that he desired counsel and that the officers should have known that Simpson had lawyerly assistance in mind." [Record No. 61] Although it may be true that lawyerly assistance may have been on Simpson's mind, what counts for invoking the protection against self-incrimination are the words uttered. And what Simpson said in response to the officer's mention of his right to refuse an answer to questions implied that Simpson wished the interrogation to continue without delay.

Ultimately, Simpson may have contemplated contacting a specific attorney once in custody and he may have been in the process of requesting that individual's assistance when officers interrupted him, but at no point did he offer a clear, unambiguous, or unequivocal statement to that effect. Even considering Simpson's acknowledgment that he had counsel

together with his incomplete statements and questions made directly after the fact, his commentary cannot be reasonably construed as an expression of a desire for the assistance of counsel.  He had the opportunity to invoke his right to counsel in an unequivocal way, but instead he invited additional discussion after officers mention that he could consult with his attorney.  And under *Smith v. Illinois*, courts may admit responses to further questioning if they find that the defendant initiated further discussions with police and knowingly and intelligently waived the right to counsel as Simpson did here.  469 U.S. 91, 94-95.  As a result, Simpson's motion to suppress the statements made to officers will be denied.

### III.

This Court considers *de novo* those portions of the Magistrate Judge's recommendations to which timely objections are made under 28 U.S.C. § 636(b)(1)(C). Defendant Simpson timely objected to the Magistrate Judge's findings that the searches of cell phones and of the residence passed constitutional muster.  And the United States made a timely objection to the Magistrate Judge's finding that the custodial statements Simpson made following his arrest violated his Fifth Amendment right to counsel.  After conducting a *de novo* review of these issues, this Court adopts the Magistrate Judge's findings regarding the cellphone and residential searches and will deny Simpson's motions to suppress.  However, the Court will also deny Simpson's motion to suppress the statements he made to police while in custody.  The Magistrate Judge's recommendation regarding this motion will be rejected for the reasons outlined above.

Being sufficiently advised, it is hereby

**ORDERED** as follows:

1.　　　United States Magistrate Judge Atkins' Recommended Disposition [Record No. 61] is **ADOPTED, in part, and DENIED, in part.**

2.　　　Defendant Simpson's objections to the Recommended Disposition [Record No. 64] are **OVERRULED**.  His motion to suppress evidence obtained in cell phone searches [Record No. 33] is **DENIED**, his motion to suppress evidence discovered during a residential search [Record No. 31] is **DENIED**, and his motion to suppress statements made during a custodial interrogation [Record No. 30] is **DENIED**.

3.　　　The United States' objection to the United States Magistrate Judge's Recommended Disposition [Record No. 63] is **SUSTAINED**, for the reasons outlined above.

Dated: December 13, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky