UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 5: 23-072-DCR |
| ) | |
| V. ) | |
| ) | |
| AKILI ONEAL SIMPSON, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

A federal grand jury indicted Akili Simpson on July 6, 2023, on four counts of distributing a mixture or substance containing fentanyl in violation of 21 U.S.C. § 841(a)(1), and one count of distributing a mixture or substance containing fentanyl which resulted in the overdose death of an individual identified as "E.J." in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). [Record No. 1] In preparation for trial, the government has retained at least two toxicologists (i.e., a medical examiner and a coroner) as expert witnesses who have examined the postmortem blood of E.J.[1]

Simpson, through counsel, has filed a motion to limit the testimony of the government's toxicologists. [Record No. 32] In particular, he seeks to prevent the toxicologists from offering any testimony that exceeds the non-binding "Guidelines for Opinions and Testimony in Forensic Toxicology" promulgated by the American Academy of Forensic Science

---

[1] According to the parties' filings, the government has retained George Behonick, PhD, and Michael Ward as expert toxicologists. In addition, the government is expected to call as witnesses Dr. Sarah Maines, who serves as the Associate Medical Examiner for the Commonwealth of Kentucky, and Boyle County Coroner Dr. Don Hamner. [Record Nos. 32 and 54]

("AAFS") and the Academy's Standards Board ("ASB"). [*Id.*] However, Simpson's motion will be denied. As discussed below, he fails to cite authority that provides a blanket restriction against admitting testimony that may depart from these advisory guidelines.

The Sixth Circuit has identified three requirements for the admissibility of expert testimony under Rule 702 of the Federal Rules of Evidence: the proposed expert must be qualified to present expert testimony, the proposed testimony must be relevant, and the proposed testimony must be reliable. *See In Re Scrap Metal Antitrust Litig.*, 527 F. 3d 517, 529 (6th Cir. 2008). In this case, Simpson essentially challenges the reliability of certain testimony from the toxicologists. Rule 702 directs courts to assess reliability based on whether (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the expert has applied the principles and methods reliably to the facts of the case. [*Id.*] The court may consider "testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific or technical community." *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94 (1993)). Rejection of expert testimony is the exception, not the rule. *See* Fed. R. Evid. 702 Advisory Committee's Notes to 2000 Amendments.

At issue here is whether a toxicologist's opinion on topics listed in the "Inappropriate Opinions and Testimony by a Toxicologist" component of the guidelines can be admitted as expert testimony. The prohibited topics according to the guidelines are: (1) an individual's absolute cause of death; (2) an individual's degree of impairment based solely on a quantitative result; (3) calculation of the dose of a drug based on a postmortem drug concentration in blood; (4) effects of a drug or combination of drugs on a specific individual without context of a given

case; and (5) use words such as "scientific certainty" or "reasonable degree of scientific certainty." *See* § 5.3(a)-(j). Defendant Simpson claims that opinions on these topics from a toxicologist are inadmissible at his trial because "they currently lack consensus within the scientific community or are generally beyond the scope of the toxicologist's expertise." [Record No. 32]

The United States opposes the defendant's motion. It contends that its retained toxicologists plan to offer testimony that satisfy *Daubert* and its progeny within the Sixth Circuit. First, in response to Simpson's challenge of a toxicologist's conclusion about the general potency of fentanyl, the government notes that Simpson omitted language regarding Section 5.3(a), which provides that the guidelines do "not preclude a toxicologist from addressing the toxicological impact of any substances found in the toxicological analysis of specimens from the case." In this case, toxicologist Michael Ward's opinion as listed in his expert report is "that this level of fentanyl is *capable of producing death*," which is a conclusion of toxicological impact. [Record No. 54, Exhibit 2] Ward does not, however, speculate that fentanyl was the "absolute cause of death."[2]

Simpson also argues that Section 5.3(g) prohibits a toxicologist from calculating "the dose of a drug based on a postmortem drug concentration in the blood." [Record No. 32] But toxicologists are not precluded from offering testimony on the general effects of drugs at varying concentrations. The government emphasizes that toxicologist Ward plans to testify that the amount of fentanyl found in E.J.'s post-mortem examination was "within a higher range associated with fatal results attributed to fentanyl abuse." [Record No. 54] This

---

[2] The government notes that the medical examiner who conducted the autopsy of E.J. and the county coroner will conclude that fentanyl toxicity was the cause of E.J.'s death.

testimony is permitted not only by Rule 702 but by ASB recommendations as well.[3] After all, the guidelines allow a toxicologist to offer testimony on the effects of a drug or combination of drugs on a specific individual *within the context of a given case*. See § 5.3(j). Here, as the government attests, Ward "has reviewed discovery materials in this case, including the autopsy report and the toxicological report." [Record No. 54] Therefore, little question remains that Ward's prospective testimony is qualified by the context of this case.

Finally, Defendant Simpson notes that Ward states that his opinions "are based on reasonable scientific and toxicological certainty based on information provided." [Record No. 60] This statement seems to flout Section 5.3 (j), which says that "[a] toxicologist should not use words such as 'scientific certainty' or 'reasonable degree of scientific certainty, unless required by jurisdictional regulations." [*Id*.] But as the government points out, "*Daubert* quite clearly forbids trial judges from assessing the validity or strength of an expert's scientific conclusions, which is a matter for the jury." *Gen. Electric v. Joiner*, 522 U.S. 136, 154 (1997).

The Court is duty-bound to follow the Sixth Circuit's framework for determining the reliability of an expert's testimony under *Daubert* and its progeny. Additionally, the undersigned notes that Simpson has not referenced any legal authority that adopts Section 5.3(j) or any other part of the guidelines as binding—or any authority that requires that outcome now. The guidelines are a form of best practices for toxicologists on the stand, amounting to an aspirational set of standards that should generally be adhered to rather than compulsory obligations.

---

[3] "[I]t is generally appropriate for a toxicologist to qualify a reported concentration in the context of a given case as subtherapeutic, therapeutic, toxic or lethal" and to "address the pharmacokinetic or toxicokinetic, as well as the pharmacodynamics or toxicodynamic of drugs or other chemicals." *See* § 5.2(b) and (c).

Being sufficiently advised, it is hereby

**ORDERED** that Defendant Simpson's motion to limit testimony from the government's toxicologists [Record No. 32] is **DENIED**.

Dated: January 8, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky